STATE OF MAINE *vs.* J. BAMFORD SPRAGUE.

Aroostook.     Opinion, June 4, 1938.

*Franz U. Burkett,* Attorney General,
*George B. Barnes, County Attorney,* for State.
*J. Frederic Burns,*
*Albert F. Cook,* for respondent.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

MANSER, J.   Respondent was indicted for murder and found guilty of manslaughter. Appeal was entered to denial of motion for a new trial upon the ground that the evidence was insufficient to warrant the verdict. Exceptions were also taken to the admission and exclusion of certain testimony.

The appeal will be first considered. The case, as developed by the State, was to the following effect:

Thomas Giggey, thirty-eight years of age, robust and healthy in appearance, powerful of build, was on duty as a policeman in the Town of Fort Fairfield on the evening of August 8, 1936. The respondent, in a restaurant and beer shop on Main Street, was intoxicated and troublesome. The officer, inspecting the premises in the performance of his duties, was requested to eject the respondent. Re-

spondent refused to leave and slumped to the floor. The officer pulled him up and impelled him forward to the sidewalk. There the respondent turned and the two faced each other, standing close together. A crowd immediately collected and pressed toward the center of action. The respondent was resisting arrest. No witnesses saw all that actually took place, but suddenly the officer, addressing the respondent by his nickname, exclaimed, "Let go, Vance, or I'll hit you." This he repeated twice, at the same time reaching for his club, which he obtained with some difficulty, and then struck the respondent on the head with it, causing him to go down over the edge of the sidewalk. The police chief then appeared and the two officers took the respondent to the police station. On the way, on two or more occasions, the respondent used the expression, "Let go of me or I will tear your Christly guts out."

At the station, the officer exhibited to his superior a wound to his private parts, it being the inflamed lacerated head of the penis, from which blood was dripping. The officer continued on duty for several days, but the injured organ became infected. He was taken to the hospital and between that time and early in October the organ sloughed off. As a direct result of the injury, and from infected embolism, sepsis of the left lung developed, causing the death of the officer in November, 1936.

The respondent's version as to the occurrence on the sidewalk agrees with that of the State that the two men were facing each other, close together, and that the officer told the respondent to let go but "I just had my hands on him more to hold myself on my feet than anything else. If I had let go of him, I probably would have fell over."

Of the seven witnesses produced by the State or the respondent as to what took place at the time of the striking of the blows by the officer, six testified that the respondent's hands were not both in sight at the same time. The seventh said that both hands of the respondent were on the officer's shoulders at the time of the blow. The credibility of this witness was sharply attacked and the State argued that from his position it was impossible for him to see what he asserted to be the fact.

Another matter in controversy was as to physical handicaps of

the respondent which it was claimed in defense rendered him incapable of the act charged. The evidence offered upon the point by the State was to the effect that the gripping power of the man's hands was undiminished.

The issue is not that the injury occurred in self-defense, but instead a denial that the respondent inflicted it. No evidence was offered to contradict the fact that the officer received a wound and died as a result of it.

It is the province of the jury to determine controverted issues of fact. In this case, the Court finds nothing to warrant interference with the result of its function in that respect.

It is urged that the crucial fact of the particular assault alleged by the State as the cause of death is not shown by any direct testimony. It depends entirely upon circumstantial evidence.

It has long been the rule in this state that all crimes may be proved by circumstantial evidence. *State* v. *Hynes*, 66 Me., 114. As was pointed out in *State* v. *Richards*, 85 Me., 252, 27 A., 122, 123:

"Several distinct circumstances, no one of which is conclusive in its nature and tendency, may be found so naturally associated with the fact in controversy and so logically connected with each other, as to acquire from the combination a weight and efficacy that will be accepted as absolutely convincing."

Yet, as further said in the same case with reference to such evidence:

"Its accuracy and soundness must be negatively tested by inquiring whether it excludes every other hypothesis than that of guilt."

Tested thus, then as remarked by the Court in *State* v. *O'Donnell*, 131 Me., 294, 161 A., 802, 803:

"When, considered as a whole, circumstantial evidence leads to a conclusion of guilt, with which no material fact is at variance, it is not, as a matter of law, inferior to direct evidence, and neither the court nor the jurors can conscientiously disregard it."

In the instant case, the Court is of opinion that the evidence is sufficient to sustain the verdict of the jury.

## EXCEPTIONS.

The first exception is to the exclusion of the question, "What was said then by any members of the crowd which indicated the temperament of the crowd as this was happening?" The question was asked in cross-examination of a witness called by the State. He had testified that he was in the restaurant and had seen the arrest of the respondent who was then taken by the officer out to the sidewalk, where a crowd collected. The witness himself could not see all that happened outside because of the crowd. The members of this group had seen no part of what transpired in the restaurant. A considerable number of people were massed into the limited area of a sidewalk, and were hemmed in by buildings on one side and parked automobiles at the curb. The inquiry was not as to exclamations, outcries or declarations of either of the participants, as in *State* v. *Wagner*, 61 Me., 178, or even the spontaneous outburst of a spectator. The question appeared to call for an expression of opinion or a conclusion reached by persons in the vicinity, regardless of their opportunity to observe the actual events, and under a situation which demonstrated that such observation was practically impossible. It was not offered in proof of the happening of an actual occurrence but, at best, to the mental reaction of individuals in a crowd present when an officer was attempting to arrest an intoxicated person. Counsel for the respondent contend that certain acts of the officer, enumerated in the brief, aroused the anger and resentment of the crowd who observed them. The record discloses that no suggestion of this character was made to the Court as a basis for the admission of the testimony and, further, the record of subsequent testimony in defense, does not support these claims of counsel. Accordingly, it appears that the Court is asked to rule that assumed or non-existent facts should be the foundation for statements made by bystanders, regardless of their opportunity for observation.

It is needless to engage in fine differentiations with respect to the hearsay rule, *res gestae*, spontaneous exclamations or the verbal

act doctrine. Much depends upon the circumstances in a given case, and the trial judge is called upon to exercise his discretion in determining the admissibility of testimony under such circumstances. *Roach* v. *Great Northern R. Co.*, 133 Minn., 257, 158 N. W., 232.

With respect to the particular evidential rules here invoked, and this exercise of judicial discretion as to cross-examination, the comment of Wigmore in his work on "Evidence" (Vol. 3, Par. 1750) is of interest. It does not appear that any prejudicial error was committed.

The second exception is to the admission of statements made by the respondent himself following his resistance to arrest, and while he was being taken to the police station. The testimony was that the respondent on several occasions said, "Let go of me or I will tear your Christless guts out." It was objected to as not a part of the *res gestae*. It was admitted for the "purpose of showing such light as may be, if any, upon his mental attitude or condition of mind."

The respondent was on trial for murder. As defined by statute and common law alike, this crime is the unlawful killing of a human being with malice aforethought either express or implied. In support of the charge, it was incumbent upon the State to prove malice. It was an essential element. *State* v. *Neal*, 37 Me., 468; *State* v. *Leavitt*, 87 Me., 72, 32 A., 787. The evidence was admissible as bearing upon the question of express malice, tending to show the attitude of mind of the respondent, its weight being for the jury. *State* v. *Albanes*, 109 Me., 199, 83 A., 548.

"Declarations made by defendant after the fatal affray showing his hostility to deceased, are admissible in evidence on the issue of malice." 30 C. J., Homicide, Par. 375, with citations from State and Federal Courts.

The third exception is to the admission of evidence offered to show a wound, freshly lacerated, sustained by the deceased. This was immediately after the respondent had been placed in jail.

The fourth and fifth exceptions are to testimony relative to the physical condition of the deceased subsequent to the alleged injury. These exceptions may be grouped for consideration. As to the first, it is specifically objected that the evidence was not a part of the *res gestae* and the case of *State* v. *Maddox*, 92 Me., 348, 42 A., 788, is

cited as authority. In that case, however, exceptions were upheld to *declarations* made by a participant subsequent to the event. In the instant case, the presiding Justice expressly excluded any statement made by the deceased with reference to the injury or its cause. The other objection was general in all three exceptions, that the particular battery alleged as the cause of death had not been proved by any direct evidence, and the condition might have been caused otherwise. The probative force of the testimony may be arguable, without affecting its admissibility. Evidence of the effect of a blow received or an assault committed need not depend for its introduction upon testimony of witnesses who saw the blow struck. A cut or slash received in a melee may be unnoticed by onlookers, but when a man emerges from an affray with visible wounds, testimony thereof is pertinent. The law is not so inconsistent as to declare that the only proof of a thing which from its very nature can not be shown otherwise, shall not be heard or considered. *Phillips* v. *Kelly*, 29 Ala., 628.

Exceptions six and seven are to the exclusion of evidence offered from a physician to show that the respondent in 1932 suffered a paralytic shock and that his condition was the same at the time of a recent examination. The respondent was afforded and took advantage of full opportunity to present testimony in support of his claim of physical incapacity at the time of the occurrence. Although this evidence of his condition five years previously was properly excluded, the respondent has no ground for complaint in any event, as later testimony from the physician, to which the State did not object, was to the effect that the respondent showed evidence of a cerebral hemorrhage of a few years' duration, and the respondent himself testified at length as to his physical condition covering a period of twenty years. The correct rule, however, is that the strength and physical condition of the deceased and the respondent at the time may be shown. *State* v. *Lederman*, (N. J.) 170 A., 652.

Exception eight; one Perry Knight, chief of police, and also a fireman, was a witness for the State. He was asked in cross-examination with reference to the performance of his duties, after the arrest of the respondent as follows:

Q. Didn't the fire alarm blow that evening?
A. Not that I recall.
Q. Do you recall the fire alarm ringing when you were out there at the car, as Mr. Sprague was being escorted into the car?
A. I do not.
Q. You say the fire alarm didn't ring, then?
A. I don't say that it didn't ring.
The Court: The witness has stated that he didn't recall. ·
Q. You say that you can't recall that a fire alarm rang about that time?
A. Right.
Q. Is it your duty to answer fire alarm calls immediately when they are rung?
A. Not necessarily.

Later a defense witness was asked as to whether he saw Perry Knight directing traffic in connection with a fire on the evening of the day in question. Upon objection by the State, the Court took the precaution to have the previous testimony of Knight read "to see if Mr. Knight denied there was a fire that night or whether he said that he didn't remember," and then ruled that the inquiry was with reference to a collateral matter, and further, that the evidence did not impeach the credibility of the witness because he had simply stated that he did not recall whether the alarm rang or not.

"It is undoubtedly true, that our rules and practice permit counsel, who expect to be able to prove an independent fact by a witness called by the opposite party to some other point, to call out that fact upon cross-examination, and in case of failure, through the false or erroneous reply of the witness, whenever the fact is material to the issue, to proceed to prove it aliunde, and to impeach and nullify the witness's statement respecting it. . . . To make such statements admissible, the witness must have testified to something that requires to be impeached, in order to make proof of the fact, and mere want of recollection can seldom, if ever, be of that character." *State* v. *Reed*, 60 Me., 550.

The ruling was correct.

The same situation exists as to exception nine. The witness, Knight, was asked in cross-examination as to whether he went into the restaurant after the respondent had been arrested, and some time later in the evening arrested one Grenier. He testified he did not recall making such arrest that night although he had apprehended the man on one occasion, and further "I will not say that it was not on that night." Testimony was offered in defense that the officer on the evening in question did make such arrest. The Court ruled that if the testimony contradicted a positive statement it could be admitted but, after the record was again read, the question was excluded. The fact of the arrest of another man later on in the evening is not shown to have any relation to the issue, was therefore collateral, and in any event comes within the rule applicable to the previous exception.

The last exception is to the admission of testimony as to a statement by respondent concerning his age, which was contradictory to his evidence given on direct examination. The physical condition of the respondent at the time of the alleged assault was pertinently developed at length. His age is a relevant element in that inquiry. It might be of slight importance and of little assistance in determination of the fact as to physical condition but it is not error to admit inconsequential evidence relating to a matter germane to the issue. Counsel for the respondent complains that it was collateral, and the rule applied against him in the two previous exceptions should have worked in his favor in this instance. Assuming it to be collateral, it is to be noted, however, that the rule that collateral testimony can not be contradicted is confined to testimony introduced in cross-examination by the party who proposes to contradict it. It does not apply to testimony introduced by the other party. *State* v. *Sargent*, 32 Me., 429; *State* v. *Kimball*, 50 Me., 409 at 415; *Williams* v. *Gilman*, 71 Me., 21.

> *Appeal dismissed.*
> *Exceptions overruled.*
> *Judgment for the State.*