Homer G. SANDER, (Plaintiff) Respondent,

v.

Ralph Earl CALLAHAN and Hazel I. Lock, (Defendants) Appellants.

No. 48614.

Supreme Court of Missouri,

Division No. 1.

Nov. 13, 1961.

Motion for Rehearing or to Transfer to Court en Banc Denied Dec. 11, 1961.

Correnti & Godfrey, Michael F. Godfrey, St. Louis, for defendant-appellant.

Samuel A. Goldblatt, William L. Mason, Jr., St. Louis, for respondent.

HYDE, Judge.

Action for $15,400 for personal injuries and property damage sustained in a colli-

sion with car owned by defendant Lock and driven by her son, defendant Callahan. Defendant Lock filed counterclaim for damage to her car. The court directed a verdict for defendant Lock on plaintiff's claim at the close of plaintiff's case; and at the close of the entire case the jury found for defendant Callahan on plaintiff's claim and for plaintiff on defendant Lock's counterclaim. Thereafter, the court sustained plaintiff's motion for new trial against defendant Callahan and overruled defendant Lock's motion for a new trial on her counterclaim. Defendant Lock appealed from the judgment against her on her counterclaim but has dismissed her appeal. Defendant Callahan appealed from the order granting plaintiff a new trial against him and that is the only matter now before us. Therefore, we will hereinafter refer to defendant Callahan as defendant.

█ Defendant contends that plaintiff was negligent as a matter of law; therefore we consider the evidence most favorably to plaintiff and state the facts on that basis. The collision occurred on a clear morning in May, with pavement dry, about 7:30 A.M. Plaintiff was driving north, down hill, on the inside right lane (next to center line) of Lemay Ferry Road, Highway 61, a four-lane highway. At that time traffic was heavy on the northbound lanes but light on the southbound lanes. The highway speed limit was 50 miles per hour. Plaintiff intended to turn left on Green Park Road about one block north of the top of the hill. There was a blinker light, blinking yellow for highway traffic, suspended on cables over the pavement at Green Park Road which went to the west but ended at Highway 61 and did not continue east. South of the top of the hill there was another heavily traveled road coming in from the east. Traffic intending to continue west had to go north on Lemay Ferry Road and turn left at Green Park Road. The bottom of this hill was about a block north of Green Park Road; then to the north Lemay Ferry Road went up another hill at the top of which was a curve beginning about four blocks north of the top of the south hill and about three blocks north of Green Park Road. At that time in the morning there were always cars at the Green Park Road intersection to make a left turn.

As plaintiff driving his Ford approached Green Park Road, there were two cars and a truck ahead of him in the same lane. The driver of the truck gave a hand signal for a left turn and plaintiff also had his hand out for a left turn. The speed of the truck and plaintiff's speed from the top of the hill to Green Park Road was "not faster than twenty-five miles an hour." Plaintiff saw cars approaching from the north, the two closest being at a street one block north of Green Park Road (the low spot in the highway between the two hills). These two cars were in the outside lane and two more were about a block north of the two closer cars and still others about three and a half blocks away at the top of the north hill. (He could make no estimate of their speed.) At the top of the south hill, plaintiff's car was "a car and a half or two car lengths" directly behind the truck; but as it reached Green Park Road the truck slowed to about 20 miles per hour so that he was then "about a car length behind it." Plaintiff said there was at least one car behind him to make a left turn and one car in front of the truck, turned left; that his "vision was obstructed a little by the truck" so that he could not say just where the approaching cars were at that time. Plaintiff did not remember whether the truck stopped before turning but said he did not stop. However, plaintiff said that when the truck turned "there was not any traffic close for him"; that "as soon as he crossed the center line and made a left turn I also, being close behind him, followed him, made a left turn to follow him"; and that "I tried to maintain the same distance and watch him so I didn't run into the back end of the truck." He further stated: "I had crossed the center lane; I was in the outside lane and the Ford was ready to enter Green Park Road.

* * * I heard tires screaming, I looked to my right and there was this car coming at me. * * * At an angle, crossing from the inside lane into the outside lane. * * He was far enough back that I could see the whole car and it looked to me as though his front bumper was just dragging on the cement—on the road." No horn was sounded. Plaintiff was made unconscious and did not remember the impact. On cross-examination, plaintiff testified: "Q. At no time before this impact occurred did you ever see the automobile driven by Ralph Callahan, isn't that correct? A. This specific car, no, I didn't see it. Q. You never did see that car before the accident occurred? A. It could have been a blue one or anything. I didn't see it." (Defendant's car was red.)

Plaintiff's witness, Robert Faust, driving south saw the collision. He said defendant's car passed him near the top of the north hill, right after the curve, going 70 miles per hour, when he was going down hill at 50 miles per hour about 300 yards north of Green Park Road; and near the bottom of the hill defendant also passed a truck 60 or 70 yards in front of Faust. (Defendant admitted passing two cars but said he passed at 50 miles per hour.) Faust said that a few seconds after defendant passed him, a Ford convertible, about six car lengths behind defendant's car, passed him at the same speed. (It could have been inferred that these two cars were racing.) Faust said northbound traffic was heavy but southbound was fairly light; and that cars were lined up to make a left turn on Green Park Road, "there were some turning and some still coming" and "several passing on through (northbound) on the outside lane." (Defendant's own testimony also verified plaintiff's statement that at least two cars made the left turn ahead of him.) Faust said defendant's car and the Ford had slowed to about 50 miles per hour when they got within 50 feet of the intersection; and that he "slowed down quite a bit because it looked like something was going to happen." He said defend-

ant's car started "changing lanes there like if he was going to pull to the outside lane there" and was still "close to 45 or 50 miles an hour" starting through the intersection (defendant said 35 to 40 miles per hour) where "there were several cars wanting to make a lefthand turn." He said he believed the truck ahead of plaintiff stopped, then "made a lefthand turn, swinging into Green Park Road, and the Oldsmobile (defendant's car) was starting to cut across the lanes." He thought defendant's car "was going to hit the truck, but the truck managed to make it through"; but that plaintiff "started to follow the truck and started to cut a little bit early across the street to follow the truck * * * sort of a sweeping turn," and was struck near the front. He said plaintiff's car was going about 10 miles per hour when he first saw it turning but accelerated to about 20 miles per hour. The Ford convertible following defendant's car got through and went on south.

Defendant argues that plaintiff's own testimony shows that he had seen approaching southbound cars and made the left turn without knowing where they were with relation to the intersection; that he had seen cars twice as far from the intersection as he was and knew they had not passed; that he blindly followed the truck ahead of him when his view was partially obstructed without looking for approaching cars; that he violated Sec. 304.021 RSMo 1959, V.A.M.S., by failing to yield the right of way to defendant's car approaching so close to the intersection as to constitute an immediate hazard; and that plaintiff's failure to see defendant's car so plainly visible shows failure to exercise the highest degree of care, citing Frandeka v. St. Louis Public Service Co., Mo.Sup., 234 S.W. 2d 540; Branscum v. Glaser, Mo.Sup., 234 S.W.2d 626; Breshears v. Myers, Mo.Sup., 266 S.W.2d 638; Adkins v. Boss, Mo.Sup., 290 S.W.2d 139; Roux v. Pettus, Mo.App., 293 S.W.2d 144; James v. Berry, Mo.App., 301 S.W.2d 530; Douglas v. Whitledge,

Mo.App., 302 S.W.2d 294; and Major v. Davenport, Mo.App., 306 S.W.2d 626.

■ Plaintiff's own testimony is somewhat contradictory, vague and indefinite as to what the situation actually was. However, considered in connection with the testimony of his eyewitness Faust, we do not find that plaintiff's evidence considered as a whole conclusively shows plaintiff guilty of contributory negligence. Thus, while the jury would be warranted in finding contributory negligence on the part of plaintiff, we hold that contributory negligence does not appear as a matter of law. The situation here is in some respects similar to that in Carpenter v. Kessner, Mo.App., 330 S.W.2d 270, 273, in which it was held the issue of contributory negligence was for the jury, saying: "The evidence is that appellant was within the intersection and had proceeded to the center of it while respondent was still a considerable distance east of the intersection. This leaves the question, 'was respondent so close thereto as to constitute an immediate hazard?' If so, appellant had the statutory duty to yield the right of way to respondent, and, ordinarily, a failure to do so would be a failure to exercise the highest degree of care as required by law of the driver of a motor vehicle and would make appellant guilty of contributory negligence. If reasonable minds could not differ on this question then it becomes a matter of law for the court to decide but if reasonable minds could differ on it then it becomes a matter for the jury to decide under proper instructions by the court."

In this case, plaintiff's testimony was that when the truck ahead of him turned left there was not any traffic close and he then followed the truck in a left turn, so that at least it is a reasonable inference that plaintiff did look north at that time. Defendant's car must not have been very close to the intersection then but reached it before plaintiff cleared it because it was traveling at such a high speed. It is difficult to determine how far away defend-

ant's car was when plaintiff turned because it does not appear at what point defendant began to slow from 70 miles per hour. (Faust said it had slowed to 50 miles per hour 50 feet from the intersection.) Perhaps if defendant had not then changed from the inside lane to the outside lane, plaintiff might have escaped. There are also other factors to consider, namely the blinking light over the intersection which defendant said he knew meant "proceed with caution" and the obvious situation of cars in heavy morning traffic continuously lining up in the inside lane of Lemay Ferry Road, under the blinking light, to make a left turn into Green Park Road. Under these circumstances and considering plaintiff's statement that there was no traffic close when the truck turned (which went in without objection) our view is that it reasonably could be found that plaintiff should not have been expected to anticipate that a car would be driven up to this intersection at that time at such a speed as the evidence herein shows. These factors distinguish this case from the recent case of Mann v. Pigg, Mo.App., 348 S.W.2d 618, cited in defendant's reply brief. In Slaughter v. Myers, Mo.Sup., 335 S.W.2d 50, 53, the plaintiff therein, before driving across an intersection, looked south (the direction from which defendant's car came) "when he could see a distance farther south than a car moving within the lawful speed limit could have traveled before he would have cleared the intersection"; but did not look again. We said: "Although the right to proceed on reaching an intersection first is not absolute and depends on the circumstances (Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575), nevertheless it would not be negligence as a matter of law for plaintiff to assume that any northbound traffic would yield him the right of way after he had looked far enough south to see any car that could have reached the intersection before he did, if traveling at lawful speed, and saw there was none within that distance." (See also Burke v. Renick, Mo.App., 249 S.W.2d 513, 516, holding it was not contributory negligence

as a matter of law to fail continually to look in one direction.) Therefore, we hold the issue of plaintiff's negligence was for the jury.

[3,4] We also must hold the court properly granted a new trial on the ground that it erred in permitting a police officer, who came after the collision, to testify that he interrogated defendant at the place of the collision and that defendant stated: "I was driving south on Lemay Ferry Road when this Ford pulled out in front of me trying to make a left turn on Green Park Road. I tried to stop but couldn't." The officer said he reached the scene about three or four minutes after the collision and that he interrogated defendant eight or ten minutes later, after administering first aid to plaintiff. He also said he believed defendant was calm at the time. Defendant says this statement was admissible under the "res gestae" rule, citing Monical v. Armour & Co., Mo.Sup., 307 S.W.2d 389; Wallendorf v. Rensing, Mo. Sup., 329 S.W.2d 779; Stratton v. City of Kansas City, Mo., Mo.Sup., 337 S.W.2d 927; and Oglesby v. St. Louis Public Service Co., Mo.App., 338 S.W.2d 357. In the Monical case (307 S.W.2d 1. c. 392) it is pointed out that the essential test of admissibility is spontaneity, "whether it is a spontaneous statement produced by the event itself." The circumstances in that case showed spontaneity even though the statement was made in response to a question because it was shown to have been by the claimant "made at a time when he * * * was experiencing pain or shock and excitement," due to an injury he had just received in his work. In this case, the evidence is that defendant was calm and there is no claim that he was injured. Nothing was shown to make it admissible under the res gestae rule and we hold the court erred in admitting it. (See Sconce v. Jones, 343 Mo. 352, 121 S.W.2d 777, 782; Cummings v. Illinois Central R. Co., 364 Mo. 868, 269 S.W.2d 111, 118, 47 A.L.R. 2d 513; Alberty v. Sunshine Biscuit Co., Mo.Sup., 321 S.W.2d 418, 423, and cases cited.) The statement involved in the Wallendorf case, supra, was held inadmissible; and the other cases are cited in support of defendant's argument that in any event it was not prejudicial to admit his statement in this case. However, this was a self-serving statement of defendant to the effect that he couldn't stop after plaintiff started to make a left turn and, whether or not we would hold it prejudicial on an appeal from the judgment, the trial court has decided it was prejudicial by granting a new trial for that reason. "It is the rule that we are more liberal in upholding the trial court's action in granting a new trial than in reversing and remanding a judgment on the same ground on appeal, especially when the exercise of judicial discretion is involved." (Stone v. Engler, Mo.Sup., 349 S.W.2d 38, 41, and cases cited.) It was error to admit this statement and the court was in a better position to determine its prejudicial effect than we are.

The court also sustained plaintiff's motion for new trial on grounds of error in giving Instructions 4 and 5. The ground stated as to Instruction 4 on lookout was that it gave the jury a false standard of maintaining a constant, careful and vigilant watch and lookout ahead and laterally and imposed an absolute duty on plaintiff "to see, discover and be cognizant of the presence, position and movements" of vehicles on the road without any qualifying standard of highest degree of care. The use of the term "constant" was criticised in Domijan v. Harp, Mo.Sup., 340 S.W.2d 728; and the failure to tell the jury in plain language "that plaintiff was required to use the highest degree of care to do the hypothesized acts so that the jury would have understood that she was not charged with the absolute duty to do all that could have been done" was held to be error in Welcome v. Braun, Mo.Sup., 319 S.W.2d 586, 589. Counsel should re-examine this instruction prior to another trial and make its requirements clearer in this respect. As to Instruction 5, the ground was failure

to hypothesize facts, "giving the jury a roving commission and permitting the jury to determine a question of law as to what constituted 'an immediate hazard'." We are not impressed that this is a valid criticism and find that an instruction requiring less as to a negligence finding was held not erroneous in MacArthur v. Gendron, Mo.App., 312 S.W.2d 146. However, plaintiff should consider this criticism in the light of the evidence adduced on retrial.

The order granting a new trial is affirmed and the cause remanded.

All concur.