**STATE of Missouri, Plaintiff-Respondent,**

v.

**Daniel Webster FOSTER, Jr., Defendant-Appellant.**

**No. 34847.**

Missouri Court of Appeals,
St. Louis District.

Jan. 16, 1973.

Motion for Rehearing or Transfer
to Supreme Court Denied
Feb. 13, 1973.

Shaw & Howlett, Terry J. Flanagan, Clayton, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Gene McNary, Pros. Atty., and Thomas E. Dittmeier, Asst. Pros. Atty., Clayton, for plaintiff-respondent.

McMILLIAN, Judge.

In August, 1971, a substituted information in lieu of an indictment charged Daniel Webster Foster, defendant, with rape and prior convictions of felonies pursuant to 556.280, RSMo 1959, V.A.M.S. The jury found him guilty of rape and thereafter the court entered its judgment of conviction on the verdict, and sentenced the defendant to twenty (20) years in the custody of the Department of Corrections. After an unavailing motion for a new trial, defendant appealed. For reasons stated below, we affirm. Since there is no issue as to the sufficiency of the evidence, we shall recount only the details of the incident necessary to explain our ruling.

Defendant claims that the trial court erred in three respects: (1) overruling objection to question, "Did you hear anything about a gun?"; (2) admission into evidence defendant's underpants; and (3) permitting victim's mother to testify as to her daughter's physical condition and what she did to relieve discomfort.

■ The prosecutrix, age 17, was assaulted by three youths, including the defendant, between 11:00 P.M., August 4, 1971, and the early morning of August 5, 1971, in a park in Webster Groves, Missouri. Each assailant, whom she knew from school and the neighborhood, had intercourse with her at least twice. She testified that while she was being subjected to this nightmare, she heard one of the assailants make a statement about a gun. The defendant objected to this testimony as being hearsay, and the objection was sustained. Earlier when making his opening statement the prosecution represented that his evidence would show that at the time of the rape she heard somebody say that, "I lost my gun." On voir dire the court ruled neither whether the remarks were relevant nor whether they were hearsay. Since the court did not rule, we shall treat the objection as overruled. No further relief was requested. Relying on State v. Wright, 319 Mo. 46, 4 S.W.2d 456, defendant now claims that these two incidents were highly prejudicial and inflammatory. The Wright case is authority against defendant's contention. It states that declarations of persons not parties to the suit are hearsay and always inadmissible unless res gestae. Suffice it to say that the utterances offered by the prosecutors came forth at the same time the nefarious acts were taking place. The spontaneity of the statements speak for their trustworthiness; thus qualifying the statements as an exception to the hearsay rule. Sander v. Callahan, Mo., 351 S.W.2d 691; Monical v. Armour and Co., Mo., 307 S.W.2d 389; McKenzie Transport Leasing Co. v. St. Louis Public Service Co., Mo.App., 349 S.W.2d 370. Therefore, the error was in defendant's favor and against the State. So defendant cannot be heard to complain, and the first point is ruled against defendant.

■ Next, defendant claims that State's Exhibit F, defendant's underpants, was im-

material, irrelevant, and highly prejudicial. Defendant also said at the time the underpants were admitted that "the testimony of the expert witness stated this cannot be traced and it can be two years old." While it is questionable as to whether defendant saved anything by this general objection, we interpret the latter statement to refer to the finding of seminal stains. Officer Robert W. Wunderlich states that at 12:45 A.M., August 5, 1971, the victim reported the rape to him. Officer Paul Walton states on August 5, 1971, at 4:00 A.M., he took defendant into custody at his home. Defendant admits arriving at the park in question between 12:00 to 12:30 A.M., on August 5, 1971, and that he went home about 3:30 A.M. that morning. At the station Officer John Aldrich took defendant's underpants. The laboratory examination by Criminologist Thomas Marren indicated a positive test for seminal stains on defendant's underwear. Candidly, Mr. Marren said that his test could in no way establish the length of time the seminal stains were present. Nor could his tests in anyway relate the stain on State's Exhibit F to the seminal stains on the victim's garments. Seizing upon these two deficiencies, defendant shouts foul. In State v. Stevens, Mo., 467 S.W.2d 10, cert. den., 404 U.S. 994, 92 S.Ct. 531, 30 L.Ed.2d 546, our Supreme Court held that in a crime of violence evidence of bloodstains on the person or his clothing is relevant to the issue of guilty. Granted blood can be identified by type and semen cannot, yet an analogy can be drawn between the two insofar as the relevancy of the evidence is concerned. Here we do not say that simply because semen is found on defendant's undergarments he committed a rape. But it does have a logical tendency to corroborate the victim's testimony. In State v. Tompkins, Mo., 277 S.W.2d 587, the court upheld the admission into evidence the clothing, identified by two officers, worn by the accused at the time of the alleged rape. The basis of the ruling was that the clothing tended to prove the State's case and was corroborative of other evidence. The fact that the evidence was inflammatory did not preclude the consideration of it by the jury. Frequently the alarm is raised that evidence of bloodstains, colored pictures of the victim, and seminal stains in rape cases, is highly inflammatory or prejudicial, and for those reasons should not be admitted into evidence. True, some evidence claimed to be inflammatory and highly prejudicial, for example, character evidence, prior convictions, and propensity to commit crimes, is excluded. But the reason usually given is that such evidence has no logical tendency to prove the reasonable likelihood of the facts sought to be established. In our case the underpants were identified and removed from the defendant within three hours of the offense, seminal stains were found on them, and defendant was positively identified by the victim who knew him. By defendant's own admission and another State's witness he was placed at the scene so as to have an opportunity to commit the crime, therefore, the presence of the seminal stains not only were corrobative of other evidence but arguably could aid to establish guilt. At most defendant's contention about the length of time the seminal stains could have been present on his underwear and the fact no nexus could be established between the seminal stains on the victim's clothing went to the weight rather than admissibility of such evidence. Accordingly, we rule that the evidence of seminal stains on defendant's undergarments was admissible for consideration by the jury.

■ Finally, we take up defendant's complaint about the testimony of the victim's mother. Ms D——— C——— testified that prior to the rape her daughter was in good health and had no scratches and bruises. Following the rape, she observed scratches and bruises on her shoulder; and that her daughter's vaginal area and legs were swollen. She also said that her daughter was so sore that she sat on a pil-

low for several days following the rape, and that she gave her epsom salts baths. Defendant claims that testimony about the victim's physical condition after the rape and what the mother did to comfort her is irrelevant and immaterial. In State v. Chandler, Mo., 314 S.W.2d 897, our Supreme Court put its stamp of approval upon a physician testifying to the subsequent physical condition of a rape victim. More to the point is State v. Weekly, Mo., 223 S.W.2d 494, where the court noted that the testimony of the prosecutrix's mother and the doctor about the condition of the child's genital organs could be used to corroborate the child's testimony. Therefore, no error was committed by allowing the mother to testify as to her daughter's physical condition immediately before and after the alleged rape. State v. Sanford, 124 Mo. 484, 27 S.W. 1099, and State v. Burton, 355 Mo. 792, 198 S.W.2d 19.

In conclusion defendant argues that the mother's testimony as to her acts to relieve her daughter's discomfort is irrelevant and immaterial. We hold that where a rape is committed by violence, not only are the marks of violence on the prosecutrix admissible to show the use of force, but also any evidence of treatment by either the doctor or the mother to relieve discomfort is admissible to show the extent of such violence.

We have considered all assignments of error that were preserved for review and find them to be without merit. The defendant was present and represented by counsel throughout the trial, including allocution and sentencing. We have also examined the parts of the record and entries designated by Criminal Rules 28.02 and 28.08, V.A.M.R., and find them to be in proper form and free from error.

Judgment affirmed.

DOWD, C. J., and WEIER, J., concur.