STATE of Maine

v.

Richard Robie JACKSON.

Supreme Judicial Court of Maine.

April 8, 1974.

Galen P. LaGassey, County Atty., Rockland, for plaintiff.

Grossman, Faber & Miller, P. A. by Edward B. Miller, Rockland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD, and DELAHANTY, JJ.

DELAHANTY, Justice.

The defendant was convicted in Superior Court (Knox County) of the offense of breaking and entering in the nighttime with the intent to commit larceny. The issue raised by the Defendant before this Court on appeal is whether the verdict rendered at his jury-waived trial is contrary to the weight of the evidence and is not supported by substantial evidence.

Viewed most favorably to the State, the record clearly establishes the occurrence of a T. 17 M.R.S.A. § 754 violation (breaking and entering in the nighttime with intent to commit larceny). The proof gives rise to an indisputable inference that the Defendant played a culpable role in the commission of a criminal act.

Since the State's circumstantial evidence is found to be a sufficient basis for a determination of guilt beyond a reasonable doubt, the conviction must stand. We deny the appeal.

From the evidence, the presiding Justice could reasonably find that about 7:15 p. m. on the evening of February 18, 1973, two Rockland police officers, in pursuit of an investigation, stationed themselves in a mo-

tor vehicle parked in a boat yard east of Main Street in Rockland and in the immediate vicinity of the rear of the United Home Furniture Company building. From this vantage point, they observed a bluish-green compact car with all three occupants in the front seat. This vehicle was parked "approximately two car lengths from the United Home Furniture Company on Main Street. It stopped there for a short time and then pulled out and left the area." In about a "minute," the same vehicle reappeared in the boat yard area and came into the line of vision of the police officers, where again it was observed that the vehicle was occupied by three people. The driver was described as "heavy-set." As the car proceeded through the boat yard area, the officers again lost sight of the vehicle itself but observed its movement through the glare of headlights. The vehicle stopped in the boat yard area, a short distance from the building housing the furniture company, and the headlights "went out." The officers remained in the vehicle, and, just minutes after the bluish-green car came to a halt, the shattering of glass was heard, and the officers gauged that the sound came from the direction of the rear of the furniture company building.

At about this time, the lights of the bluish-green vehicle again "came on" and the car travelled within the vision of the police officers who observed that now only one person occupied the front seat. This vehicle proceeded to Main Street where it again stopped about two car lengths from the front of the furniture company building, and the lights "went off." The investigating officers summoned assistance, and two additional police officers arrived at the scene and placed the vehicle which had now stopped on Main Street under surveillance for a period of approximately fifteen minutes.

Meantime, the officers stationed in the boat yard left their vehicle to investigate the vicinity of the furniture company building and discovered broken windows in the building and glass on the ground be-low. Further observation from the outside of the building disclosed the rays of a flashlight shining within the building. The officers secreted themselves in a cluster of brush nearby, and in a short time they observed two individuals leave the building via a window and drop to the ground some eight feet below. Both men then proceeded to walk in the direction of the bluish-green vehicle parked on Main Street.

While these two individuals were proceeding in the direction of the compact car, the Defendant, under surveillance by the police officers summoned to the scene, was observed to be constantly looking through the rear window of the vehicle in the direction from which the two individuals who had exited from the building were walking. When the two individuals were about "30 to 40 feet" away from the vehicle, one of them, identified as George Myers, Jr., was apprehended; the other took flight and was not located.

Just prior to the apprehension of George Myers, Jr., the Defendant was taken into custody as he sat in the vehicle. The vehicle occupied by the Defendant was owned by Myers, Jr. The time of apprehension of this defendant was between 7:40 and 7:45 p. m. It was estimated that the entire episode consumed between 20 to 30 minutes.

■ It has long been the rule in this State, except where otherwise provided by statute, that any crime may be proved by circumstantial evidence. State v. Liberty, Me., 280 A.2d 805 (1971); State v. Merry, 136 Me. 243, 8 A.2d 143 (1939); State v. Sprague, 135 Me. 470, 199 A. 705 (1938).

The burden cast upon the State to establish guilt based upon circumstantial evidence has become so standardized that it need not be repeated here. State v. Haycock, Me., 296 A.2d 489 (1972).

The State concedes that the Defendant was at no time in the building. Conviction stands only if his conduct in the circumstances raises the indisputable inference that he acted as a "lookout" and, as such,

became a principal to the crime of burglary being committed at the time on the United Home Furniture Company premises by Myers and his companion.

The proper rule of law is that to constitute one as a principal in the commission of a felony, he must be proved to be present either actually or constructively at the time and place it was committed. The issue of actual presence is necessarily simple. The limits of constructive presence are more or less uncertain. In Commonwealth v. Knapp, 9 Pick., Mass., 496, 20 Am.Dec. 491, as in 16 C.J. 126, § 114-b, and 22 C.J.S., Criminal Law, § 86b, p. 154, illustrations are given which indicate that one who is watching at a proper distance and station "to prevent a surprise" or "to favor, if need be, the escape of those * * * immediately engaged" may properly be considered as constructively "present, aiding and abetting." State v. Saba, 139 Me. 153, 156, 27 A.2d 813, 815 (1942).

■ Proof of the crime itself is clear and unmistakable. The circumstantial evidence in the record, seen in its full perspective, forms a reliable basis upon which the fact finder did properly conclude that Defendant-Appellant acted in concert with the actual perpetrator, Myers, and his unidentified companion.

The inference most logically drawn from Jackson's actions, before, during and after the burglarious act is that drawn by the trier of the facts—that this Defendant was acting as a "lookout" and available to permit a ready departure.

It is obvious that actual, or constructive, presence at the scene of a crime during its commission for the purpose of assisting the perpetrator in his escape, all by pre-arrangement, is not descriptive of being only an accessory after the fact. Rather, such conduct meets the legal requirements necessary to establish participation as a principal offender. State v. Simpson, Me., 276 A.2d 292, 295 (1971); accord, Commonwealth v. Lowry 374 Pa.

594, 93 A.2d 733 (1953); White v. State, 154 Tex.Cr.R. 489, 228 So.2d 165 (1950).

■ From that inference it can be determined that, as a matter of law, a lookout acts with another in the pursuit of a common purpose since he is in a position to insure the success of the common illegal enterprise. As such, the lookout is a principal, equally chargeable with the actual crime of breaking and entering in the nighttime with intent to commit larceny which was clearly established here.

The proof of Jackson's guilty participation in the crime committed meets the standard of proof in criminal cases resting on circumstantial evidence.

The evidence was sufficient to justify conviction and there was no error in the denial of the Defendant's motion.

The entry shall be:

Appeal denied.

All Justices concurring.