**STATE of Maine**

v.

**Frank PEABODY.**

Supreme Judicial Court of Maine.

May 22, 1974.

John H. Fallon, County Atty., Belfast, George N. Bowden, Student, for plaintiff.

Eaton, Glass, Marsano & Hammond, by Thomas W. Hammond, III, Belfast, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

ARCHIBALD, Justice.

The defendant has appealed from his conviction after having been indicted, tried before a jury and found guilty of second degree arson. 17 M.R.S.A. § 162.[1] The appeal is premised upon three allegedly erroneous rulings by the Justice who presided at the trial. Appellant asserts that the Justice erred in these respects:

(1) He refused to grant motions for a mistrial because, after permitting the jury to hear an oral statement made to the owner of the burned structure, he then ruled that the statement should be excluded for failure to give the so-called Miranda warning.

(2) He admitted in evidence two confessions, one oral and the other in writing.

(3) He failed to grant motions for acquittal made at the close of both the State's case and the defense.

For reasons which will be delineated we deny the appeal.

### FACTS

One James Fernald owned what will be referred to as a camp, located on land belonging to his father. This frame structure was ordinarily used as a hunting camp, was serviced with electricity and the heating and cooking was by means of gas and oil. The camp was furnished, including bedding, and the door secured with a padlock which was kept locked "all the time" when not in use. Both the service facilities for the gas and oil were empty.

On the evening in question Mr. Fernald was awakened and by looking out his window could see the camp burning. He dressed and proceeded to the highway. Because he recognized the defendant proceeding along the highway, he did not go to the scene of fire but started in pursuit of the defendant. This pursuit was interrupted by the approach of Mr. Fernald's brother in a car but was continued after some intervening conversation with the brother. Mr. Fernald ultimately went to a trailer where he knew the defendant lived, knocked on the door and then observed the defendant appear from behind the trailer carrying a flashlight. At that time a conversation ensued between them which will be discussed later herein because it was out of this conversation that the alleged basis for a mistrial arose.

Various other witnesses testified to the total destruction of the camp. An expert in the field of arson examined the remains and found nothing from which he could conclude that any type of spontaneous ignition would be the cause of the fire. Examinations of the ruins disclosed the hasp "bent right around showing signs of it being pried" with the padlock still intact. This hasp was found "laying right beneath where the door, or right on the inside of where the foundation was to the building."

Some seventeen hours after the defendant was originally interrogated by the camp owner, he was arrested by a deputy sheriff and taken to the Waldo County Jail. After having been given appropriate warnings consistent with Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), he told the arresting officer that after prying off the lock with a broken "truck spring leaf" he entered the building, set either a pile of bedding or papers on fire and that when he left the camp "it was all ablaze."

1. "Any person who willfully and maliciously (1) sets fire to (2) burns (3) causes to be burned or (4) aids, counsels or procures the burning of any building or structure of whatsoever class or character, whether the property of himself or of another, not included or described in section 161, shall be guilty of arson in the second degree . . . . ." 17 M.R.S.A. § 162.

Due to the Fourth of July week-end an early appearance at the District Court for preliminary arraignment was deferred but on July 6th, after again being given the Miranda warnings, the defendant signed a written three and one-half page statement in which he acknowledged planning for and setting the fire which consumed the camp.

The defendant elected not to be a witness. The jury returned the verdict of guilty after deliberating forty-two minutes.

## ISSUE ONE

*Was it error not to grant the motions for mistrial?*

After the camp owner had originally contacted the defendant a conversation ensued in which the defendant admitted he was the party responsible for the fire and that, in fact, he had set three or four similar fires in the area within the past three weeks. While this conversation was in progress various people appeared on the scene but did not engage the defendant in any conversation. The Justice presiding, in the absence of the jury and after hearing the testimony, ruled that the evidence was admissible. The camp owner then repeated this testimony in the presence of the jury but in so doing it became apparent that one person on the scene was a deputy sheriff who was within approximately twenty feet of where the conversation was taking place but he was not participating therein. The defendant was not then under arrest and, as previously indicated, was not actually arrested until some seventeen hours thereafter. The Justice then excused the jury and after listening to the arguments of counsel, stated:

"I think the absolute approach of this deputy sheriff, knowing the purpose of his visit there, knowing that this man was making admissions to this Fernald, that it was his responsibility at that time immediately to warn this fellow of his constitutional rights. . . .

. . . . . .

I am going to determine that this man was in custody, that he recognized the deputy sheriff; the deputy sheriff did appear on that scene at that time; that at that time, it was absolutely necessary for him to give the Miranda warning to this defendant."

Defendant's counsel then moved for a mistrial since he felt that a corrective instruction would be ineffectual "especially . . . with the admissions as to the other fires." The Justice denied the motions and instructed the jury that in its deliberations "you are to take as a fact that no statements were ever made by this defendant to this witness."

■ Our Court has recently considered the circumstances under which a mistrial should be granted and reaffirmed the rule that only if the stricken evidence is so inherently prejudicial that curative instructions would not suffice, would a new trial be required. State v. Heald, 292 A.2d 200 (Me.1972). The cases reaching this conclusion ordinarily deal with *inadmissible* evidence erroneously received and later stricken. State v. Hachey, 278 A.2d 397 (Me.1971). Since the rule is designed to protect a criminal defendant from the impact of prejudicial inadmissible evidence which would tend to contaminate a verdict, it seems clear to us that the rule would have little application where *admissible* evidence is erroneously stricken, because the striking of such evidence could not injuriously affect the defendant's rights. Graham v. State, 25 Ala.App. 44, 140 So. 621 (1932). As the Missouri Court put it:

"[T]he error was in defendant's favor and against the State. So defendant cannot be heard to complain . . . . ."

State v. Foster, 490 S.W.2d 662, 663 (Mo. App.1973).

It would appear from the language of the Justice below (quoted infra), that he ruled

the mere presence of a police officer at the scene of an interrogation by a layman requires the immediate giving of the Miranda warnings. We do not agree with the concept.

■■■ As we understand *Miranda,* a police officer is under no obligation to stop a suspect from making a voluntary statement which in no way is the product of police interrogation. State v. Lafferty, 309 A.2d 647 (Me.1973). A fortiori, when a layman is interrogating a suspect who is not under arrest and who voluntarily responds, the mere presence of a non-participating police officer on the scene does not, per se, make operative the exclusionary rule.

Where a criminal suspect was being interrogated by the lay victim of the crime in the presence of the county sheriff and prosecutor and where the suspect voluntarily responded with inculpatory remarks, the Supreme Court of Utah allowed this testimony even though the law enforcement officials who heard the admissions had given no Miranda warnings, the Court holding admissible

"a statement of a criminal defendant in custody which was not made in response to any process of interrogation initiated by the police or by someone acting as an agent or instrumentality of the police."

State v. Guerrero, 29 Utah 2d 243, 245, 507 P.2d 1029, 1030 (1973); *see also* State v. Fletcher, 279 N.C. 85, 181 S.E.2d 405 (1971); Truex v. State, 282 Ala. 191, 210 So.2d 424 (1968); Edington v. State, 243 Ark. 10, 418 S.W.2d 637 (1967); People v. Petker, 254 Cal.App.2d 652, 62 Cal.Rptr. 215 (1967).

Where an interrogation was conducted by a civilian not acting on behalf of the police, the Oregon Court allowed the testimony, stating:

"[F]ield interrogation of a focal suspect without the *Miranda* warnings could be received in evidence where the suspect was not yet under arrest and the coer-

cive elements described in *Miranda* were not present."

State v. Crossen, 10 Or.App. 442, 447, 499 P.2d 1357, 1359 (1972).

We conclude that the Justice below erroneously excluded the statement made to Mr. Fernald by the appellant and, therefore, he has shown no entitlement to be the beneficiary of a mistrial.

We do not overlook the fact that the statement made to the victim of this crime included references to several prior acts of arson which the defendant admitted.

■■■ Initially, we observe that the State is obligated under the indictment to prove that the burning of the camp was done "willfully and maliciously." Therefore, evidence which has a rational tendency to support proof of such a state of mind is admissible. It has long been the general rule that whenever a defendant's guilt of an extraneous crime tends logically to prove against him some particular element of the crime for which he is being tried, such guilt may be shown. State v. Lanzo, 44 N.J. 560, 210 A.2d 613 (1965); State v. Koch, 322 Mo. 106, 16 S.W.2d 205 (1929); State v. Ritter, 288 Mo. 381, 231 S.W. 606 (1921); State v. Raymond, 53 N.J.L. 260, 21 A. 328 (1891). It is equally clear that such evidence must be in reasonable proximity in terms of time and distance to the offense described in the indictment so that it may be said to have probative value in establishing a necessary element of the crime charged. State v. Hopkins, 117 Ohio App. 48, 189 N.E.2d 636 (1962); State v. Mulero, 51 N.J. 224, 238 A.2d 682 (1968).

Appellant admitted setting "3 or 4" fires in the immediate area within three weeks of the arson for which he was being charged. Such evidence has probative value which the jury could properly weigh in determining whether the specific act in question was done willfully and maliciously. Therefore, the exclusion of such testimony and the instruction to the jury to

disregard it was a ruling adverse to the State, completely beneficial to the defendant and from which he cannot be heard to complain.

## ISSUE TWO

*Did the Justice below err in admitting the two confessions?*

█ We have carefully analyzed the record with reference to the ruling on the admissibility of these confessions, and it is abundantly clear that the Justice below had full factual support for his decision that both the oral and written confessions were completely voluntary and taken in compliance with the mandates of *Miranda*.

The trial in this case was held in October, 1972. State v. Collins, Me., 297 A.2d 620, was published December 8, 1972. In ruling on the admissibility of both the oral and written confessions, the Justice below understandably followed the procedures, which had, prior to *Collins,* been standard practice in our Superior Court. He conducted preliminary hearings in the absence of the jury dealing with the questions of admissibility, made an independent ruling thereon, and then submitted the question of admissibility to the jury with appropriate instructions to disregard such confessions unless they found that the State had established the evidentiary admissibility of these confessions. In *Collins* we abandoned this procedure, leaving upon the shoulders of the presiding Justice the burden of deciding the question of the evidentiary admissibility, or inadmissibility, of such confessions for all purposes. The jury's sole function thereafter was to "evaluate the totality of the circumstances in which the confession was given for the purpose of assigning credibility and weight to it, in light of all the evidence." *297 A.2d at 636.*

It is thus clear to us that the appellant was the beneficiary of a ruling more favorable to him than he would have been entitled to under the holding in *Collins* but consistent with the pre-*Collins* procedure. Under these circumstances no substantial rights of the defendant were affected. State v. Lafferty, 309 A.2d 647, 660 (Me.1973).

## ISSUE THREE

*Was it error not to grant the motions for judgment of acquittal?*

█ The Justice below correctly declined to order judgments of acquittal. Absent the use of the confessions, the State proved the corpus delicti. The camp was burned to the ground. The possibility of spontaneous ignition was excluded and there was ample proof of forcible entry. From these circumstances a rational jury could conclude that someone unlawfully caused this building to be burned. Arson may be established by the use of circumstantial evidence.[2] State v. Levesque, 146 Me. 351, 81 A.2d 665 (1951); State v. Caliendo, 136 Me. 169, 4 A.2d 837 (1939). This is likewise the law in other jurisdictions. People v. Bailey, 42 Mich.App. 359, 202 N.W.2d 557 (1972); State v. Kitowski, 44 Wis.2d 259, 170 N.W.2d 703 (1969); People v. Andrews, 234 Cal.App.2d 69, 44 Cal.Rptr. 94 (1965); State v. Hopkins, *supra.* These circumstances, coupled with the confessions, all being unexplained or uncontradicted, formed a factual background from which the jury could say beyond a reasonable doubt that the defendant was guilty. The denial of these motions was not error.

The entry is:

Appeal denied.

All Justices concurring.

2. This rule, of course, is not limited to arson, e. g., State v. Liberty, 280 A.2d 805 (Me. 1971); State v. Pratt, 151 Me. 236, 116 A. 2d 924 (1955); State v. Parento, 135 Me. 353, 197 A. 156 (1938); State v. Sprague, 135 Me. 470, 199 A. 705 (1938); State v. Cloutier, 134 Me. 269, 186 A. 604 (1936); State v. Ward, 119 Me. 482, 111 A. 805 (1921).