**STATE of Maine**

v.

**William Robert CLARK.**

Supreme Judicial Court of Maine.

Nov. 27, 1978.

---

6. See 11 M.R.S.A. § 1–201(25) and Comments, as respects the Code definition of *'notice'*.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty., Portland, Constance P. O'Neil (orally), Law Student, for plaintiff.

Bornstein & Campbell by Remington O. Schmidt, Portland (orally), for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

WERNICK, Justice.

By indictment returned December 14, 1976 in the Superior Court (Cumberland County) defendant William Clark was charged with having committed, on November 8, 1976, the crime of Burglary of a dwelling place, a Class B crime, in violation of 17–A M.R.S.A. § 401. Tried before a jury at the end of November, 1977, defendant was found guilty as charged. He has appealed from the judgment of conviction. Among the several grounds claimed by defendant as reversible error, we find one dispositive: that the presiding Justice erroneously excluded evidence critically important to the defense against the charge. We sustain the appeal on that ground without reaching the other issues raised.

At approximately 10:00 p. m. on November 8, 1976, neighbors observed flickering lights in a garage attached to John Malconian's home on George Street in Portland. Upon investigation the neighbors discovered defendant Clark hiding in the garage. A number of matches were found on the garage floor. Subsequently inspecting the garage, the owner observed that a rotisserie, a gas can, and an antique cash register were not as they were when he had last seen them; they had been moved or upset. The one door leading from the garage into the Malconian home showed no signs of any attempted entry.

Both at the time of his arrest and at trial, defendant maintained that he entered the garage to escape from assailants who were pursuing him. His story, in more detail, was as follows. On the night in question he was driving his car along Baxter Boulevard. Noticing that a car was tailing him, he tried to lose it by making a series of turns in and out of various streets unfamiliar to him. Ultimately, he stopped his car and jumped out to confront his followers. Two passengers, their identity unknown to defendant, began to beat him. In an effort to escape, defendant sought refuge in a nearby garage he happened to notice.

Over objection by the prosecution, defendant was permitted to testify about being assaulted on three prior occasions.[1] Once, two unknown persons had kicked in defendant's apartment door and beat him for half an hour. At another time five people had entered defendant's apartment, and in the presence of his friend, David Coffey, threatened to kill him. On a third occasion, a pair of assailants attacked defendant in his girlfriend's apartment.

It was against this background of previous assaults on him that defendant testified about being frightened because men in a car were tailing him. Explaining why he ran from the occupants of the car, defendant said:

"My life is in jeopardy. My life has been in jeopardy several times and if I didn't, I'd of been dead now. I mean, I'd run into a place for a baseball bat or something I can defend myself with."

Defendant also testified that to assist him in looking for a weapon to use to protect himself, he lit several matches while he was in the garage.

The only other defense witness, defendant's friend David Coffey, testified that on November 8th defendant telephoned him from the County jail, told him that he had been arrested and asked Coffey to find his car and move it. Defendant added that he "wasn't quite sure which street it was on." Coffey testified that he found defendant's car out in the middle of a street, six to eight feet from the curb.

When defense counsel undertook to question Coffey about his knowledge of the second of the prior assaults to which defendant had testified, the prosecution objected. The objection was sustained and the evidence was excluded.[2]

1. In response to the State's objection the presiding Justice ruled: ". . . I am going to admit it not necessarily as proof of the truth of the statement, but as to establish the state of mind as far as the . . . [defendant is] concerned." He instructed the jury that the defendant's testimony should not be considered as evidence of "the truth of what the witness is about to testify, but merely as it bears upon his state of mind."

Had there been an indication that the defense was seeking to introduce hearsay through the mouth of the defendant, this ruling would have been proper. Here, however, defendant was seeking to testify to events he personally witnessed, and there was no indication that hearsay evidence was forthcoming. The presiding Justice's instruction was thus misleading. Defense counsel's purpose was to establish *both* the truth of the defendant's testimony regarding the alleged prior assaults and the defendant's resulting state of mind on the night of November 8th. By instructing the jury not to consider the truth of defendant's testimony but only defendant's state of mind, the presiding Justice created a risk that the jurors might infer that they were to consider whether defendant was mentally deranged and had hallucinated a series of imaginary assaults which later led him to run from non-existent assailants into Malconian's garage. This would have led the jury to believe that defendant's story was even weirder than the one he was trying to tell.

2. The State contends that since defense counsel failed to make a proper offer of proof which

We agree with defendant's claim that the exclusion of Coffey's testimony on this point was reversible error.

The *only* issue in the trial concerned defendant's reason for entering the garage. Did he intend to steal something, or, as he maintained, did he intend merely to escape from unknown assailants? Precisely because the story told by defendant was so unusual as not to command ready belief, basic fairness required that there be special concern to ensure that the jury have the benefit of all relevant circumstances reasonably tending to corroborate defendant's testimony and thus assist defendant in his effort to establish that in his case the truth was truly "stranger than fiction."

Trial courts have generally been admonished to grant defendants wide latitude in admitting evidence of other events and circumstances which circumstantially shed light on the intent of defendants discovered on the premises of other persons.[3] In cases like the one now before us, where the defendant's intent was the only contested issue, to refuse to admit evidence which could have important bearing in revealing defendant's state of mind is tantamount to depriving the defendant of an opportunity to make any defense at all. Here, the exclusion of such corroborating circumstantial evidence seriously impaired defendant in his attempt to convince the jury that he should be acquitted of burglary because he entered another person's garage with the lawful intention of escaping from assailants he believed were threatening his life, and not for the purpose of committing a crime therein.

The entry is:

Appeal sustained; judgment of conviction set aside.

NICHOLS, J., did not sit.

---

would have alerted the presiding Justice to the nature of the testimony sought to be introduced, defendant is precluded from raising the issue of the presiding Justice's ruling on appeal.

The record indicates plainly that no offer of proof was necessary. It is not tenable to assert, as the State does, that the presiding Justice was unaware of the substance of Coffey's testimony. Defendant had already testified concerning the prior assaults, and had stated that a friend was present during the second incident. The question propounded to Coffey was: "Were you ever present in his [defendant's] apartment when there was an altercation between him and some other people?" The wording of the question itself informed the Court of the substance of the anticipated answer.

3. Some cases in other jurisdictions concern burglary defendants who maintained that their intent was to have consensual sexual intercourse with a woman on the premises. In these situations, appellate courts have held that the failure to admit evidence or romantic liaisons between the defendant and the woman in question is prejudicial error. *Hawkins v. State*, 247 Ala. 576, 25 So.2d 441, 442 (1946); *Robinson v. State*, 53 Md. 151, 153, 154 (1879).