**STATE of Maine**

v.

**Randy S. LeCLAIR.**

Supreme Judicial Court of Maine.

Argued Nov. 12, 1980.

Decided Jan. 30, 1981.

G. Arthur Brennan, Dist. Atty., Alfred, Joseph A. Wannemacher, Asst. Dist. Atty., Gene R. Libby, Deputy Dist. Atty., Deborah A. Buccina (orally), Law Student Intern, for plaintiff.

Eric B. Cote, Saco (orally), for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, GLASSMAN, ROBERTS and CARTER, JJ.

CARTER, Justice.

Following a jury trial in Superior Court, Randy S. LeClair was convicted of arson in connection with a fire at Neptune's Landing, a seasonal restaurant in Old Orchard Beach.[1] On appeal, the defendant argues that the evidence was insufficient to support the verdict and that the trial court erred in excluding evidence important to his defense. We set aside the conviction and remand for a new trial because the trial court's exclusion of evidence constituted prejudical error.

The fire occurred in the early morning of November 11, 1979. The restaurant had been closed since Labor Day, and it is not disputed that the fire was caused by arson.

---

1. The indictment for violation of 17–A M.R.S.A. § 802 charged:

That on or about the 11th day of November, 1979, in the Town of Old Orchard Beach, County of York, the above named defendant Randy S. LeClair did start, cause or maintain a fire on the property of another, namely; Neptune's Landing, owned by Robert Ouellett, with the intent to damage or destroy the property thereon.

The state's evidence showed that LeClair was in the area before and during the fire. His fingerprint was found on broken glass from the window through which the arsonist gained entry to the building. The police also found human blood on the broken glass, and LeClair was seen the day after the fire with a fresh cut on his hand. LeClair gave the police inconsistent explanations for his cut hand and the presence of his fingerprint on the glass.

In his own defense, at trial, LeClair offered an innocent explanation for the state's evidence. In addition, he attempted to present a two-part theory of defense. First, he attempted to show that the Neptune's Landing fire was one of several fires of similar origin in the same area, probably set by the same person, most of which occurred on days when he was not in Old Orchard. In addition, he also attempted to show that a certain Joseph Cleaves was more likely to be the arsonist. While the defendant was able to present some of his evidence in support of these theories, the trial court's rulings prevented him from presenting them completely.

### I. Sufficiency of the Evidence

The defendant contends that the evidence was insufficient to support the jury's finding of guilt beyond a reasonable doubt and that the court should have granted his motion for a judgment of acquittal at the close of all the evidence. M.R.Crim.P. Rule 29(a). We disagree.

■ Although the state produced only circumstantial evidence, a conviction based on circumstantial evidence is not for that reason any less conclusive. *State v. Gagnon*, Me., 383 A.2d 25, 31 (1978).

■ Quoting *State v. Liberty*, Me., 280 A.2d 805, 809 (1971), the defendant argues that the state's circumstantial evidence is not "sufficient to exclude every other reasonable hypothesis except that of the defendant's guilt." He does not argue that the trial court should have given a special jury instruction with respect to the sufficiency of the evidence. Clearly, the trial

court was correct to avoid any such "negative exclusion" instruction.

The language quoted from *Liberty* has been disapproved as a jury instruction, because courts have found that it tends to confuse the jury by creating an erroneous distinction between direct and circumstantial evidence. The now discredited instruction was never intended to create a special rule concerning sufficiency of the evidence in circumstantial evidence cases. It was designed only as a "precautionary additional clarification" of the meaning of proof beyond a reasonable doubt. *State v. Pike*, Me., 306 A.2d 145, 149–50 (1973). Our more recent decisions make clear that the "negative exclusion" instruction is unacceptable and valueless because it wrongly suggests that proof of circumstantial evidence is subject to a more rigorous standard than is proof by direct testimonial evidence. *State v. Little*, Me., 343 A.2d 180, 185 (1975); *State v. Heald*, Me., 333 A.2d 696, 700 (1975).

■ There is one single standard of proof for all criminal convictions, and the test is the same in a case of either circumstantial or direct evidence:

whether from all the evidence and from such reasonable inferences as may properly be drawn therefrom the guilt of a defendant has been proved beyond a reasonable doubt.

*State v. Jackson*, Me., 331 A.2d 361, 365 (1975).

■ When the state produces circumstantial evidence tending to support an inference of the defendant's guilt, the jury must also consider, of course, any explanation for the evidence consistent with the defendant's innocence. The jury's guilty verdict must be based not on a determination that there exists no alternative explanation, but that, after assessing the credibility of such explanations, they raise no reasonable doubts as to the defendant's guilt.

■ In this case, we find that the jury was properly instructed with regard to the standard of proof beyond a reasonable

doubt. Applying this standard, the jury could properly have found that the circumstances, viewed in relation to each other and together with the rational inferences that could be drawn from them, compelled the "irresistible conclusion of guilt." *State v. Gagnon*, Me., 383 A.2d 25, 31 (1978). In light of the evidence before them, the jury was entitled to conclude that the defendant's version of the events was not credible and that the evidence he presented in his own behalf raised no reasonable doubts as to his guilt.

## II. *Ruling on Evidence About the East Grand Street Fire*

We agree with the defendant's contention that the trial court improperly excluded evidence about a fire on November 12, 1979 —the day after the Neptune's fire—at the apartment of Joseph Cleaves at 37 East Grand Street. The particular factual setting in which the offer and ruling took place is essential for understanding why the ruling constituted prejudicial error.

The defendant began developing his theory about Cleaves and the other fires during his cross-examination of the state's second witness, Patrolman Corcoran. Out of the presence of the jury, defense counsel explained the theory that Joseph Cleaves and his companions started the fire at Neptune's as a cover for their break-in at a nearby store on the same night. The court sustained the state's objection to evidence about the burglary, on grounds that it was not relevant. At that point, the defendant also made an offer of proof about other fires in the area during 1979. In particular, he pointed to a fire the very next day, in his own apartment building on East Grand Street. The fire occurred in the apartment of Joseph Cleaves, which was adjacent to the defendant's apartment. The court ruled that it would permit the defendant to make only a limited inquiry, of an expert witness, concerning the dates and places of fires believed to be set by the same person, together with evidence of the defendant's whereabouts on those days. The state's objection to evidence about the fire at East Grand Street and to evidence relating Cleaves to any of the fires was sustained. The court stated that the ruling was based on both relevance and prejudice to the defendant and that the rulings would be reconsidered depending on what later witnesses said.

Despite these rulings, the jury subsequently heard evidence—from four different witnesses and with no objection from either party—about the East Grand Street fire.

On direct examination by the state, Detective Tibbetts, the investigating officer, testified that he talked to LeClair the day after the fire and saw a fresh cut on LeClair's left hand. On cross-examination by the defendant, Tibbetts reported LeClair's explanation that he had received the cut that morning while breaking a window to put out a fire in the apartment next door to his.

The next witness called by the state was Lawrence Dolby, a state fire inspector who qualified as an expert witness with regard to determining the causes of fires. On cross examination by the defendant, he gave his opinion that several fires in Old Orchard Beach were of similar origin and had been set by the same person and that the Neptune's fire was one of those fires. He gave the places and dates of several similar fires, including one at 37 East Grand Street on the day after the Neptune's fire.

The defendant then presented his witnesses, beginning with Robert LaBlanc, who had been the defendant's roommate at the time of the Neptune's fire. LaBlanc testified that he and LeClair lived at 37 East Grand Street and had moved out because they had a fire in November, 1979. At that point, the defendant requested permission to ask LaBlanc about the fire for the purpose of showing that the fire was in Joseph Cleaves's apartment and that the defendant could not have been involved in starting the fire. The court again sustained the state's objection to that line of inquiry.

The defendant then took the witness stand in his own behalf. He gave his expla-

nation of the events on the night of the Neptune's Landing fire. He also testified on direct examination that he lived at 37 East Grand Street from August to November, 1979, and that he moved out after the fire which occurred the night after the Neptune's Landing fire. Neither party objected or moved to strike this testimony.

The defense's next witness was the police detective, Paul Tibbetts. The defense counsel again asked permission to ask Tibbetts about the burglary, explaining that this evidence would put Joseph Cleaves near the Neptune's Landing at the time of the Neptune's fire. The state's objection to that evidence was again sustained. On direct examination, Tibbetts, when asked about other fires during 1979, again mentioned the fire at 37 East Grand Street.

The defendant successfully introduced testimony to show that he was either at work or not living in Old Orchard on the dates and times of many of the similar fires. Therefore, he was not completely prevented from presenting his theory of defense. The court's ruling prevented him, however, from disassociating himself from the fire in his own building and from implicating Joseph Cleaves in any of the fires.

■ The court's rulings were explicitly based both on a determination of relevance and on a determination that the probative value of the evidence was outweighed by its danger of unfair prejudice to the defendant. See M.R.Evid., Rules 402 and 403. The trial court has broad discretion in making these determinations, and on appeal we will review them only for abuse of that discretion. State v. Kotsimpulos, Me., 411 A.2d 79, 81 (1980); State v. Morton, Me., 397 A.2d 171, 178 (1979).

In sustaining the state's objections to evidence about the East Grand Street fire, the court indicated concern about unfair preju-

dice to the defendant, difficulty of giving proper jury instructions, and danger of confusing the jury with side issues. The court stated that it would not have allowed the state to introduce evidence about the Cleaves fire, and therefore the evidence should also be excluded when the defendant attempted to introduce it, because the degree of prejudice to the defendant would be the same.

■ We find that the court's stated concern for the defendant was misplaced. Even though the defendant ran the risk that the proffered evidence would do him more harm than good, the court should have respected his request that the jury be permitted to decide what should be concluded from the evidence. See State v. Nelson, Me., 399 A.2d 1327, 1329 (1979). As far as LeClair was concerned, the evidence did not concern a collateral side issue, but was one of the key points of his defense. Especially where the state's case is based on circumstantial evidence, the court should allow the defendant "wide latitude" to present all the evidence relevant to his defense, unhampered by piecemeal rulings on admissibility. See State v. Clark, Me., 394 A.2d 779, 782 (1978). The defendant was willing to take the chance that the evidence would have a prejudical effect, and proper instructions could have prevented the jury from being misled or confused.[2]

■ If the jury had never heard about the East Grand Street fire, the court's ruling might simply have prevented the defendant from presenting his defense as completely and effectively as he had planned, and a reversal of the jury's finding of guilt beyond a reasonable doubt might not be appropriate. But after the jury had heard three witnesses testify about the East Grand Street fire, the court's exclusion of further evidence was unfair to the defendant. The jury now knew about a fire in

---

2. We do not suggest that a proper application of the Rule 403 balance can never result in exclusion of evidence offered by the defendant in his own defense. We have upheld the exclusion of such evidence where the proffered evidence would have done little or nothing to prove or disprove anything involved in defend-

ant's trial, but presented great danger of confusing the issues and misleading the jury. State v. Kotsimpulos, 411 A.2d 79, 81–82 (1980); State v. Littlefield, 408 A.2d 695, 697 (1979); State v. Morton, 397 A.2d 171, 178–180 (1979).

LeClair's apartment building which the state fire inspector had identified as similar in origin and probably started by the same person as the fire LeClair was accused of starting. The court prevented the jury from hearing testimony from LeClair or his roommate to explain the circumstances of the fire or LeClair's lack of involvement in it. Left in this posture, the evidence may very well have led the jury to conclude that the defendant was involved in another arson similar to the one for which he was being tried. If so, the court's ruling improperly did positive harm to his defense.

We cannot say that the error did not influence the jury or that the jury's verdict would not have been favorable to the defendant if the defendant had been allowed to present all his evidence about the East Grand Street fire. For these reasons, the defendant is entitled to a new trial.

### III. *Exclusion of Evidence About the Burglary*

The court also excluded evidence about a burglary, on the same night as the Neptune's Landing fire, at a store near Neptune's, to which Joseph Cleaves had pleaded guilty. This ruling was based on the court's determination that the evidence was not relevant. The defendant contends that it was relevant, together with other evidence about Cleaves, to show that Cleaves committed the arsons rather than LeClair.

Since a new trial is already required as a result of the erroneous ruling discussed above, we do not decide whether the trial court also erred in its ruling on the burglary evidence. We address the issue briefly, because the situation may arise again in a new trial.

In appropriate circumstances, a defendant should be allowed to introduce evidence to show that another person committed the crime or had the motive, intent, and opportunity to commit it. *Commonwealth v. Graziano*, 368 Mass. 325, 329, 331

N.E.2d 808, 811 (1975); Wigmore on Evidence §§ 139–142 (3d ed. 1940 and 1980 Supp.). The trial court also has discretion to exclude such evidence if it is too speculative or conjectural or too disconnected from the facts of the case against the defendant. M.R.Evid., Rules 402 and 403.

In this case, if the defendant had produced evidence clearly connecting Cleaves with a fire of similar origin, then evidence placing Cleaves near the scene of the Neptune's fire would have been relevant for purposes of incriminating Cleaves and thereby exculpating the defendant. Since the trial court's other rulings prevented the defendant from attempting to demonstrate any such connection, we have no basis for expressing any opinion on the admissibility of the burglary evidence.

The entry must be:

Judgment of conviction vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.