STATE of Maine

v.

**Arol Dean CROCKER.**

Supreme Judicial Court of Maine.

Argued Sept. 16, 1981.

Decided Oct. 19, 1981.

David M. Cox, Dist. Atty., Gary F. Thorne, Asst. Dist. Atty. (orally), Dover-Foxcroft, for plaintiff.

William E. Macdonald (orally), Bangor, for defendant.

Before McKUSICK, C. J., and GOD-FREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

VIOLETTE, Justice.

The defendant, Arol Dean Crocker, appeals from convictions of two counts of burglary, 17–A M.R.S.A. § 401(1), and two counts of theft, 17–A M.R.S.A. § 353(1), entered by the Superior Court, Piscataquis County, following a jury trial. In his appeal the defendant alleges that the trial judge erred in two rulings: first by excluding defendant's testimony relating to his state of mind at the time of the incidents; second, by refusing to give a requested additional jury instruction on the definition of the term "structure" as it is used in the burglary statute. We sustain the appeal and vacate the convictions.

### FACTS

On November 26, 1979 and November 29, 1979, defendant Arol Crocker and his codefendant at trial, David A. Perkins, removed and took away in a truck various items of property from a house belonging to a Lena Hamm. Testimony at trial indicated that the Hamm house and surrounding property were in an unoccupied, dilapidated and unkept condition. The defendants, Crocker and Perkins sold the items taken from the house to a dealer in antiques and Crocker received money for the items. At trial, Crocker's counsel undertook to question him about a conversation he had in May of 1979 with a Mr. Trott, which would have tended to establish that Crocker believed he had permission to enter the Hamm house and remove items.[1] The testimony was excluded after the following colloquy took place during defense counsel's direct examination of Crocker:

Q Okay. Do you remember where and when that conversation (with Mr. Trott) took place?

A It was ... We was in, I guess, in Dover. Dover, Dexter, I can't recall. He mentioned it to me, said his aunt owned a place and she—

ASSISTANT DISTRICT ATTORNEY: Your Honor, I object to anything Mr. Trott—as being said if being offered for the truth of the matter.

THE COURT: It's a proper objection, the Jury will disregard that.

DEFENSE COUNSEL:

Q Did you understand from—well, strike that.

As a result of your conversation with Mr. Trott, did you understand a relationship to exist between Mr. Trott and Lena Hamm?

ASSISTANT DISTRICT ATTORNEY: Your Honor, again if this is going to the truth of the matter, it would be based on information he obtained from Mr. Trott.

THE COURT: It would be just another way of getting around the hearsay rule, so it would be excluded.

DEFENSE COUNSEL:

---

1. The substance of the conversation was admitted into evidence earlier in the trial through the testimony of a police officer to whom Crocker had related the contents of the conversation. The police officer testified on cross examination by defense counsel as follows:

Q Deputy Sergerson, you said that Mr. Crocker said something to you about permission he'd gotten from Gene Trott. And I didn't understand the detail of that, what exactly did Mr. Crocker say to you about the permission he had gotten to go into the Ham (sic) residence?

A He had been with Mr. Trott back in May—is that what you're referring to?

Q Yes. Well, it goes back to then, I guess.

A Well, when Mr. Trott supposedly had told him that the person that owned the house was his aunt and that they were—that he had permission to take the items out of there because they were going to tear the place down.

Q Who had the permission, Mr. Trott did, as you understood it?

A As I understood it from Mr. Crocker, yes, right.

Q You understood Mr. Trott had indicated that same permission to Mr. Crocker; is that correct?

A The case would be that if you're in the area and you want to stop in there, you may, and take it to Pauline Lewis' because she'd buy it; that was the indication, yes.

Q So you understood that Trott suggested taking these items to Pauline Lewis'?

A Well, this is what Mr. Crocker was telling me.

Q Did you have permission to go to that residence?

A I did from Mr. Trott.

ASSISTANT DISTRICT ATTORNEY: Your Honor, again—

THE COURT: Now the Jury is going to disregard that because that's the same matter that I've excluded twice before.

Defense counsel made no offer of proof and made no attempt to inform the judge upon what rule or principle he relied for the admissibility of the evidence.

## I. EXCLUDED TESTIMONY

### A. Burglary Convictions

One of the elements of the crime of burglary under the Maine Criminal Code which the State must prove is that the accused entered a structure "knowing that he (was) not licensed or privileged to do so." 17–A M.R.S.A. § 401(1). Consequently, the defendant is entitled to present evidence at trial, within the strictures of the Maine Rules of Evidence, tending to disprove the knowledge element of the crime. Rule 802 of the Maine Rules of Evidence states that hearsay evidence is not admissible except as provided by law or by other Maine rules of evidence. See M.R.Evid. 803 and 804 for exceptions. Rule 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.Evid. 801(c). It is clear that the excluded testimony was relevant, nonhearsay evidence which went to the issue of whether the defendant knew he did not have a license or privilege to enter the Hamm house. The proffered testimony was not being offered to prove the truth of the matter asserted, but rather to establish the factual basis for Crocker's state of mind existing at the time of entry into the Hamm house. The trial judge erroneously excluded the evidence. Because we conclude from the record before us that defense counsel did not properly save the error for appeal our review is limited to the question of whether the error was so prejudicial as to meet the "manifest error/serious injustice" standard. State v. Howard, Me., 405 A.2d 206, 210 (1979).

The record indicates that the only seriously disputed issue at trial was whether Crocker had permission to enter and remove items from the Hamm house. Refusal to allow the defendant to testify as to his state of mind at the time of the alleged commission of the crime, "is tantamount to depriving the defendant of an opportunity to make any defense at all." State v. Clark, Me., 394 A.2d 779, 782 (1978). We note also that the magnitude of the error involved here is emphasized by the jury's acquittal of the codefendant in this case. The codefendant, Perkins, was permitted to testify, without objection from the State, as to his conversation with Crocker bearing on his (Perkins) understanding of having permission to enter the Hamm house and remove items therefrom; the same line of evidence that Crocker was precluded from testifying to. Based on this state of the evidence, we conclude that the jury could have found that Perkins believed he had a "license or privilege" to enter and remove items from the Hamm house, whereas Crocker knew he did not have a "license or privilege" because he was not allowed to testify to the contrary. The magnitude of the error in excluding Crocker's testimony on the state of mind issue was not reduced by the earlier testimony of the police officer regarding the conversation Crocker told him he had with Mr. Trott. There is a significant difference between the jury hearing the testimony from the police officer and hearing it from the defendant himself. Crocker was entitled to have the jury hear and consider his own testimony in making their determination of whether Crocker knew or did not know he had no "license or privilege" to enter and remove items from the Hamm house. The excluded testimony was material and crucial to the defendant's case on the state of mind issue and we find that its exclusion was so prejudicial as to require reversal of the burglary convictions under the "manifest error/serious injustice" standard.

### B. Theft Convictions

The theft statute under which Crocker was convicted reads as follows:

§ 353. Theft by unauthorized taking or transfer

1. A person is guilty of theft if he obtains or exercises unauthorized control over the property of another with intent to deprive him thereof. 17–A M.R.S.A. § 353(1).

Although this particular section of the theft statute does not contain the word "knowing" we determine that a reading of section 353 in conjunction with section 11(5) of the Criminal Code requires us to include in section 353 the culpable state of mind of knowledge. 17–A M.R.S.A. § 11(5) provides as follows:

5. If a statute defining a crime in this code does not expressly prescribe a culpable mental state with respect to some or all of the elements of the crime, a culpable mental state is nevertheless required, pursuant to subsections 1, 2 and 3, unless:

A. The statute expressly provides that a person may be guilty of a crime without culpability as to those elements; or

B. A legislative intent to impose liability without culpability as to those elements otherwise appears.

We conclude that section 353 does not expressly provide for guilt without culpability and that the legislature did not intend to impose liability without culpability.[2]

As a result of our reading of the theft statute, the excluded testimony was material and crucial on the defendant's state of mind when he removed the items from the Hamm house. Specifically, the excluded testimony was relevant on the issue of whether Crocker knew his control over the Hamm items was unauthorized at the time of the incidents. Our analysis of the prejudicial effect of the excluded testimony on the burglary convictions applies with equal weight to the theft convictions and requires us to reverse those convictions as well.

## II. JURY INSTRUCTION

 The defendant argues on appeal that the trial judge erred in refusing to give a requested instruction. We find no merit in this argument.

The presiding judge correctly charged the jury, instructing them thoroughly and completely on the elements of the crime of burglary. The judge gave the jury the legislative definition of "structure". *See* 17–A M.R.S.A. § 2(24). After completion of the instructions, the defense counsel requested that the judge further instruct the jury on what constituted a structure within the Criminal Code. The requested instruction essentially restated the definition already given. It is well established law in this State that a trial judge need not give a requested instruction if he has otherwise covered the content of the requested instruction. *See, e. g., State v. Smith*, Me., 400 A.2d 749, 756 (1979); *State v. Wallace*, Me., 333 A.2d 72, 80 (1975).

The entry is:

Appeal sustained.

Judgments of conviction vacated.

Remanded for further proceedings consistent with the opinion herein.

GODFREY, NICHOLS, CARTER and WATHEN, JJ., concurring.

ROBERTS, J., with whom McKUSICK, C. J., joins dissenting.

ROBERTS, Justice, with whom McKUSICK, Chief Justice, joins, dissenting.

I disagree with Part I of the Court's opinion and therefore respectfully dissent. Had the trial court sustained a general objection by the prosecutor, I would concur in the majority decision. In this case, however, the objection was specifically framed to limit the purpose for which the evidence was to be admitted, *viz.* "I object . . . if being offered for the truth of the matter." M.R.Evid. 801(c).

---

**2.** The legislative comment to section 353 states that its basic structure is taken from the Model Penal Code. Section 223.2(1) of the Model Penal Code, "theft by unlawful taking or disposition," closely approximates section 353 and also does not include the word "knowing." In the comments to section 223.2, the draftsmen state "the required *mens rea* for the "unlawful" aspect of the defendant's taking or control of another's property is effectively knowledge." Model Penal Code, section 223.2, comment 7.

The majority asserts that "[t]he proffered testimony was not being offered to prove the truth of the matter asserted, but rather to establish *the factual basis* for Crocker's state of mind existing at the time of entry into the Hamm house." (Emphasis added.) I agree that the testimony would not be hearsay if offered merely to prove Trott's statement as a factual basis for Crocker's belief that the owner of the premises had authorized Crocker's conduct. Defense counsel, however, never accepted this limitation upon the statement's admissibility. Without the limitation the statement was hearsay and properly excluded.