STATE of Maine

v.

**Michael A. SEGER.**

Supreme Judicial Court of Maine.

Argued Sept. 2, 1987.
Decided Oct. 28, 1987.

Janet T. Mills, Dist. Atty., William Maselli (orally), Law Student Intern, Auburn, for plaintiff.

Julian L. Sweet (orally), Paul F. Macri, Berman, Simmons & Goldberg, P.A., Lewiston, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

CLIFFORD, Justice.

Michael Seger appeals his conviction of attempted murder, 17–A M.R.S.A. §§ 152, 201 (1983), gross sexual misconduct, 17–A M.R.S.A. § 253 (1983), and two counts of kidnapping, 17–A M.R.S.A. § 301 (1983), entered after a jury trial in the Superior Court, Androscoggin County. Seger contends that the court erred: (1) in failing to suppress out-of-court identifications made by the victim, (2) in excluding evidence of another crime that occurred shortly after the incident involved in this case and (3) because there was insufficient evidence to support a finding of guilt on any of the charges. We affirm the judgment.

This case arises out of the following facts. On Saturday, August 16, 1986, the victim, a woman in her 20's, drove to the Country Kitchen Thrift Shop in Auburn with her two year old son, the younger of her two children. After buying some baked goods she returned to her car in the Thrift Shop parking lot. It was approximately 3:00 p.m. As she was putting her son in his car seat, she noticed a yellow car drive into the parking lot. The car parked beside her and a man quickly emerged. He forced the victim and her son into her car at knife point. She was forced to lie on the front seat of her car as her assailant drove away with her and her son towards New Auburn. The assailant stopped the car in a small open field near the Prospect Hill golf course and sexually assaulted the victim. The assailant then tied the victim's hands behind her back with her belt, and tied her legs together with the shoelace from her left sneaker. When she asked how she would be able to take care of her son if she was tied up, the assailant responded "Don't worry. You're not going to have to take care of the baby." She then broke free from her restraints and struggled briefly with the assailant. Her assailant hit her on the head repeatedly with an empty soda bottle and stabbed her numerous times throughout her body, inflicting grievous wounds. Her assailant fled in her car, leaving her lying on the ground with her son standing beside her.

The victim staggered to a house close by, taking her son with her. Two nearby golfers heard her cries for help and summoned aid. After emergency surgery at Central Maine Medical Center, she made a slow recovery.

On the following day, August 17, the victim was awake and alert in her hospital bed as she recuperated from the previous day's surgery. She gave a description of her assailant to Lieutenant Steven Mehalcik and Detective Normand Guay of the Auburn Police Department. She described her assailant as a white male with a beard and wearing black framed glasses. He had acne on his face. She noticed the bottom portion of a reddish tattoo on one of his forearms. He was wearing jean pants, a jean jacket and sneakers. Based on her description, a composite drawing was made of the suspect.

On August 21, Detective Guay showed the victim a photographic array of six men, none of whom had beards or glasses. Detective Guay had received tips implicating two of the subjects pictured in the array. The victim did not recognize any of the subjects as her assailant.

In the meantime, another tip led Detective Bruce Bartlett of the Auburn Police Department to telephone Seger. Seger voluntarily came to the station to be interviewed. A photograph was taken of his face and another photograph was taken of a red tattoo on his right arm. Seger's license was also taken, with his permission, and his license picture was enlarged. The license photo showed Seger with a beard and glasses with black frames. He had since shaved his beard and was no longer wearing glasses.

On August 24, Detectives Bartlett and Guay visited the victim in the hospital. They had with them a photo array of five photos from the police department's files and the enlarged license photo of Seger. All six subjects in the array wore glasses and had beards. The victim could not speak due to a tracheotomy tube that had recently been inserted in her windpipe, but she was alert. She identified the defendant as her assailant by pointing and nodding her head. She was then shown the photographs of the defendant's face and tattoo that had been taken at the police station, and she identified each one as being that of her assailant. Seger was then arrested.

A suppression hearing was held in the Superior Court on October 9 regarding the victim's identification of the defendant's pictures on August 24. The motion justice ruled that the identification procedure was not impermissibly suggestive.

On November 9, a live lineup was conducted at the Androscoggin jail. The defendant participated in the lineup and was represented by counsel. The victim identified the defendant as being her assailant. At the trial, the victim again identified the defendant as being her assailant. After deliberating, the jury returned its verdict of guilty as to all charges.

I.

Seger's first contention is that the out-of-court identification procedures used by the police were impermissibly suggestive. We disagree.

The due process clause of the fourteenth amendment to the United States Constitution protects criminal defendants from the use of evidence derived from suggestive out-of-court identifications that are " 'conducive to an irreparable mistaken identification.' " *State v. True*, 464 A.2d 946, 949 (Me.1983), quoting from *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). *See also State v. Boucher*, 388 A.2d 907, 908 (Me.1978); *State v. Rowe*, 314 A.2d 407, 412–13 (Me. 1974).

If the motion justice does determine that the police used an unduly suggestive procedure in obtaining the challenged out-of-court identifications, the identification evidence is inadmissible against the defendant unless the motion justice makes a further finding that the " 'corrupting influence' of the suggestive procedures was outweighed by the reliability of the identification." *State v. Toussaint*, 464 A.2d 177, 179–80 (Me.1983).

A review of the record in this case reveals that the photographic identification was not unduly suggestive. The police did not suggest to the victim that any of the pictures showed a suspect in the case. Seger claims that his enlarged license pho-

to was different in appearance from the other photos used by the police and thereby suggestive. The motion justice found that Seger's picture was not dramatically different from the others shown to the victim, and nothing persuades us that this finding was error. Nor can we disagree with the motion justice's finding that the photographs of Seger's face and his tattoo (shown to the victim *after* she identified Seger in the array) did not result in a suggestive identification procedure.

 Next, Seger claims that the live lineup procedure was suggestive, relying on *Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). Seger was represented by counsel at the lineup. No objection was made to the live lineup procedure either at the lineup or at trial. Seger raises his objection for the first time in this appeal. He has not properly preserved this alleged error for our review. *See State v. Dunn,* 480 A.2d 788, 790 (Me.1984); M.R. Evid. 103(a)(1). Unpreserved error will serve as a basis for reversal only where it produced a fundamentally unfair trial. *See Dunn,* 480 A.2d at 790. We cannot say that evidence derived from the live lineup procedure had this effect.

## II.

Seger next challenges the trial justice's refusal to allow the jury to consider evidence of what Seger contends is a similar crime he could not have committed.[1]

We have carefully examined the testimony offered in a voir dire before the trial justice. The testimony was of the victim of an abduction that took place in the early morning of August 23, 1986. The victim had entered her car at approximately 1:20 a.m. when a man knocked her over in the front seat and grabbed her hair, telling her not to move or scream or he would kill her. She described the man as being fairly short, with a round face, mustache and dark hair. Her assailant then drove a short distance with her in the car. She escaped by jumping out the passenger's side door.

 The trial justice found that this testimony was not relevant[2] and excluded it. We note that a defendant in a criminal trial may introduce evidence of a similar crime committed by a third party to negate his guilt. *State v. LeClair,* 425 A.2d 182, 187 (Me.1981); 1 J. Wigmore, *Wigmore on Evidence* §§ 139, 142 (3d ed. 1940); 2 J. Weinstein and M. Berger, *Weinstein's Evidence* § 404[15] at 404–117 (1986). We have held that evidence of an allegedly similar crime committed by a third person and offered by a criminal defendant should be admitted at trial in appropriate circumstances. *LeClair,* 425 A.2d at 187.

 The evidence of this crime offered by Seger was of no probative value to raise a reasonable doubt as to Seger's guilt. The crime Seger was convicted of involved an abduction, a sexual assault, and the use of a knife. The crime Seger offered evidence of did involve an abduction, but was not similar to the crime he was charged with in any other way. No weapon was used by the unidentified assailant and no sexual assault was committed or attempted. Moreover, it is not clear whether the assailant was interested in stealing his victim's car or abducting the victim. We affirm the determination by the trial justice that the evidence offered by defendant was not of a similar crime and was not relevant.

## III.

 Seger's final claim is that the evidence was insufficient to support the jury's verdict. We pay great deference to a jury's findings of fact in a criminal case. *See State v. Lovejoy,* 493 A.2d 1035, 1037–38 (Me.1985). The standard applied when reviewing the sufficiency of evidence in a criminal case is "whether, based on [the]

---

1. The trial justice accepted as true Seger's offer of proof that he could not have committed this crime.

2. M.R.Evid. 401 defines relevant evidence as: "[E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

evidence viewed in the light most favorable to the prosecution, any trier of fact could find rationally beyond a reasonable doubt every element of the offense charged." *State v. Barry,* 495 A.2d 825, 826 (Me. 1985). *See also State v. West,* 504 A.2d 622, 625 (Me.1986); *State v. Anair,* 499 A.2d 152, 154 (Me.1985).

The State's case was based exclusively on the identification testimony of the victim. In the past, we have held that the testimony of a victim in a rape case is by itself sufficient to sustain a conviction. *State v. Foley,* 392 A.2d 1094, 1096 (Me. 1978); *State v. McFarland,* 369 A.2d 227, 230 (Me.1977). Likewise, the identification testimony of the victim in this case was sufficient to support Seger's conviction. One of the jury's unique functions as a trier of fact is to assess the credibility of witnesses. The jury found the victim to be a credible witness. There is nothing in the record requiring that the jury's decision in this regard should be overturned.

The entry is:

Judgment affirmed.

All concurring.